1

2

3

4

5

6

7

8        UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                    AT TACOMA

10   ALAN B. McREYNOLDS,

11                  Plaintiff,              CASE NO. 12-cv-06071 RBL

12        v.                                REPORT AND RECOMMENDATION
                                            ON PLAINTIFF'S COMPLAINT
13   CAROLYN W. COLVIN, Acting
     Commissioner of the Social Security    Noting Date: February 28, 2014
14   Administration,

15                  Defendant.

16

17        This matter has been referred to United States Magistrate Judge J. Richard

18   Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19   4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261,

20   271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 14, 15, 20).

21        After considering and reviewing the record, the Court finds that the ALJ erred

22   when reviewing the medical evidence regarding plaintiff's physical impairments.

23   Specifically, she failed to credit fully the opinion of treating physician, Dr. Bradley,

24

because he did not review records subsequent to his treatment relationship with plaintiff and did not review plaintiff's hearing testimony. However, the ALJ did not explain what aspect of plaintiff's subsequent treatment record or hearing testimony demonstrated any legitimate basis to discredit the opinions of Dr. Bradley. The treatment records of Dr. Bradley contain multiple opinions not reflected in the ALJ's RFC.

Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

## BACKGROUND

Plaintiff, ALAN B. McREYNOLDS, was born in 1953 and was 51 years old on the alleged date of disability onset of June 24, 2004 (*see* Tr. 130-34). Plaintiff has an 11th grade education and took a 60-day construction trade course in 1970 (Tr. 751-53).

"During the relevant period, the claimant had the following severe impairments: osteoarthritis, osteoporosis, history of T5 fracture, acid reflux, cochlear dysfunction, affective disorder, depression, anxiety, and substance abuse in variable remission (20 CFR 404.1520(c) and 416.920(c))" (Tr. 705).

## PROCEDURAL HISTORY

In his Opening Brief, plaintiff provides the following history:

> Plaintiff, Alan B. McReynolds ("McReynolds") protectively filed applications for Social Security and Supplemental Security Income (SSI) disability benefits on January 25, 2007, alleging that he has been disabled since June 24, 2004. After his applications were denied initially and on reconsideration, McReynolds filed a hearing request, and a hearing was held before Administrative Law Judge Gary J. Suttles on October 6, 2009. (Tr. 28-70). On October 23, 2009, ALJ Suttles issued a decision in which he found that McReynolds had been disabled since May 14, 2008, but not before that date. (Tr. 13-27). McReynolds

requested review by the Appeals Council, which denied his request for review. (Tr. 1-3). A timely Complaint was filed in Federal District Court. (Tr. 777-79). The parties then stipulated to the remand of McReynolds's claims for a new hearing limited to consideration of the time period of June 24, 2004 through May 13, 2008. (Tr. 771-76). A new hearing was held before Administrative Law Judge Rebekah Ross ("the ALJ") on July 27, 2012. (Tr. 725-64). On August 30, 2012, the ALJ issued a decision denying disability benefits for the time period of June 24, 2004 through May 13, 2008. (Tr. 700-24). After 61 days, this decision became final, and a timely Complaint was filed in Federal District Court.

(ECF No. 14, p. 2. (footnote omitted)); *see* 20 C.F.R. § 404.981.

Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in December of 2012 (*see* ECF Nos. 1-3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on April 2, 2013 (*see* ECF Nos. 9, 10).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ properly evaluated the medical evidence; (2) Whether or not the ALJ properly evaluated plaintiff's testimony; (3) Whether or not the ALJ properly evaluated the lay evidence; (4) Whether or not the ALJ properly assessed plaintiff's residual functional capacity; and (5) Whether or not the ALJ erred by basing her step five finding on a residual functional capacity assessment that did not include all of plaintiff's limitations, and by failing to find plaintiff to be disabled pursuant to Medical-Vocational Rule 201.14 (*see* ECF No. 14, pp. 1-2).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *See Bowen v.*

*Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled pursuant to the Act only if claimant's impairment(s) are of such severity that claimant is unable to do previous work, and cannot, considering the claimant's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995) (*citing Magallanes, supra*, 881 F.2d at 750).

1   In addition, the Court must independently determine whether or not "'the

2   Commissioner's decision is (1) free of legal error and (2) is supported by substantial

3   evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v.*

4   *Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002) (collecting cases));

5   *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (*citing Stone v. Heckler*, 761 F.2d

6   530, 532 (9th Cir. 1985)). According to the Ninth Circuit, "[l]ong-standing principles of

7   administrative law require us to review the ALJ's decision based on the reasoning and

8   actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit

9   what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219,

10  1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other

11  citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we

12  may not uphold an agency's decision on a ground not actually relied on by the agency")

13  (*citing Chenery Corp, supra*, 332 U.S. at 196). In the context of social security appeals,

14  legal errors committed by the ALJ may be considered harmless where the error is

15  irrelevant to the ultimate disability conclusion when considering the record as a whole.

16  *Molina, supra*, 674 F.3d at 1117-1122; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*,

17  556 U.S. 396, 407 (2009).

18                          <u>DISCUSSION</u>

19  **(1)          Whether or not the ALJ properly evaluated the medical evidence.**

20         **a.**  Physical impairments

21                 **i.**  Dr. Steven Michael Bradley, M.D., treating doctor

1    Plaintiff complains about the ALJ's rejection of the opinion from treating doctor,

2  Dr. Bradley, on the basis that "Dr. Bradley did not have the opportunity to review all of

3  the medical records in the file nor consider the claimant's testimony at each of the

4  hearings" (Tr. 226, 713). Although defendant contends the ALJ's rejection was proper, as

5  it is appropriate for an ALJ to consider the extent to which the doctor is familiar with

6  other information in the case record, plaintiff replies that "an ALJ is also required to

7  consider the physician's treatment relationship as well as the supportability and

8  consistency of his opinion (*see* Reply, ECF No. 20, p. 2 (*citing* 20 C.F.R. §

9  404.1527(c))). Plaintiff's argument is persuasive, as will be discussed further below.

10

11    Following a DEXA scan on October 18, 2004, showing "quite significant

12  osteoporosis [and] significant osteopenia," (*see* Tr. 422), Dr. Steven Michael Bradley,

13  M.D. diagnosed plaintiff with T5 compression fracture on October 29, 2004, among other

14  diagnoses (*see* Tr. 209). Dr. Bradley indicated his plan to initiate physical

15  therapy/occupational therapy "to help patient maximize his activities of daily living given

16  his restrictions with his compression fracture" (*see id.*).

17    Dr. Bradley opined on June 3, 2005 that plaintiff "has been unable to perform any

18  type of work activity from the date of injury, June 25, 2004, to current. The patient is not

19  expected to be returned to work" (Tr. 228). He indicated that "Projected medical findings

20  that show this patient is unable to work because of this work-related condition include T5

21  compression fracture and osteoporosis" (*id.*). He assessed specific limitations, such as

22  restriction to "weight bearing less than 30 pounds" (*id.*).

On December 9, 2005, Dr. Bradley noted plaintiff's report of "significant back pain with problems with reaching and lifting and twisting as well as sitting in one place for greater than 20 minutes" (Tr. 234). Dr. Bradley noted his observation that plaintiff, "sitting in a chair, needed to adjust positions rather frequently" (*id.*). Dr. Bradley also noted that although vocational services offered to pay for breaks during plaintiff's commute every thirty minutes that "this would not be acceptable," as plaintiff required "breaks every 20 minutes" (Tr. 235).

On February 10, 2006, Dr. Bradley opined that plaintiff "has idiopathic osteoporosis resulting in T5 vertebral compression fracture in the setting of heavy lifting related to his employment as a roofer" (*see* Tr. 239). He opined further that plaintiff "is at increased risk for further fractures due to this condition and thus is restricted to lifting less than thirty pounds" (*id.*). Dr. Bradley indicated his opinion that plaintiff's pain related to his fracture "limits his ability to stand, sit, bend or twist" (*id.*). Although Dr. Bradley indicated that physical therapy was prescribed to address these limitations, plaintiff "will possibly continue to have limitations in these areas" (*id.*).

Although a January 26, 2007 right hip x-ray showed no fracture, it also indicated "Moderate degenerative change at L4-L5 in the lumbar spine particularly on the right" (Tr. 297).

The ALJ indicated that she gave Dr. Bradley's opinion some weight, as he "had the opportunity to see the claimant on multiple occasions and review imaging during the relevant period" (*see* Tr. 713). However, she rejected his opinion in part, indicating that "greater weight is not given because Dr. Bradley did not have the opportunity to review

1    all the medical records in the file nor consider the claimant's testimony at each of the

2    hearings" (*id.*).

3          Plaintiff argues that the ALJ's reason is not a legitimate reason to reject the

4    opinion of a treating physician because "Dr. Bradley was able to base his decision on

5    clinical findings and on his longitudinal treatment of [plaintiff], [and] Dr. Bradley's

6    opinion is largely consistent with the medical opinions of Mrs. Zygar and Mr. Myers"

7    (*see* Opening Brief, ECF No. 14, p. 6). Based on a review of the relevant record, the

8    Court finds plaintiff's argument to be persuasive, and notes that a "treating physician's

9    medical opinion as to the nature and severity of an individual's impairment must be given

10   controlling weight if that opinion is well-supported and not inconsistent with the other

11   substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc.

12   6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR

13   LEXIS 9); *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

14

15         In general, more weight is given to a treating medical source's opinion than to the

16   opinions of those who do not treat the claimant.  *Lester, supra*, 81 F.3d at 830 (*citing*

17   *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). According to the Ninth Circuit,

18   "[b]ecause treating physicians are employed to cure and thus have a greater opportunity

19   to know and observe the patient as an individual, their opinions are given greater weight

20   than the opinion of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

21   1996) (*citing Rodriguez v. Bowen*, 876 F.2d 759, 761-762 (9th Cir. 1989); *Sprague v.*

22   *Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).

23

24

1   Here, the ALJ rejected the treating physician's opinion by noting that he didn't

2   review the entire medical record, however, as plaintiff points out, "for the time period of

3   June 2004 through February 2006, Dr. Bradley was familiar with *all* of [plaintiff's]

4   relevant medical evidence" (*see* Reply, ECF No. 20, p. 2). As argued persuasively by

5   plaintiff, the ALJ could not reject properly "Dr. Bradley's opinion for the time period of

6   June 2004 through February 2006 simply because he did not review later medical records

7   and testimony (*see id.*). Although subsequent medical records or testimony can in some

8   circumstances demonstrate the error in an earlier opinion, the ALJ has not explained how

9   the subsequent records and testimony demonstrated any error in Dr. Bradley's opinion in

10   the matter herein. This is error, as when rejecting medical opinion evidence, an ALJ must

11   explain why her own interpretation, rather than that of the doctor, is correct. *See Reddick*

12   *v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Embrey v. Bowen*, 849 F.2d 418,

13   421-22 (9th Cir. 1988)).

14

15   Additionally, the Court notes plaintiff's following argument:

16   [It] makes no sense for an ALJ to reject Dr. Bradley's opinion for the
    time period of June 2004 through February 2006 based on the fact that
17   Dr. Bradley did not review [plaintiff]'s hearing testimony in 2009 and
    2012 . . . . as there is no evidence that Social Security ever provides
18   any treating physician with the opportunity to review and comment upon
    a claimant's hearing testimony.
19

20   (Reply, ECF No. 20, p. 2). The ALJ has not explained in this particular instance why

21   plaintiff's specific hearing testimony demonstrates any reason to discredit the opinion of

22   Dr. Bradley.

23

24

For the reasons stated, and based on the relevant record, the Court concludes that the ALJ failed to evaluate properly the medical opinion evidence of Dr. Bradley. This error is not harmless error.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Although defendant contends that Dr. Bradley's opinion was not inconsistent with the RFC determination of the ALJ, plaintiff points out that "the ALJ's [RFC] assessment is not consistent with Dr. Bradley's June 2005 opinion that [plaintiff] has been unable to perform any work since June 2004, nor is it consistent with this February 2006 opinion that [plaintiff] was limited in 'his ability to stand, sit, bend or twist' due to pain" (*see* Reply, ECF No. 20, pp. 2-3). In response to defendant's harmless error argument, plaintiff also replies that "contrary to the Commissioner's inference, the ALJ did not

include a general reaching limitation in her residual functional capacity assessment; she only limited [plaintiff] to no more than occasional overhead reaching" (Tr. 707).

Based on the relevant record, and for the reasons stated herein, the Court concludes that had the ALJ fully credited the opinion from Dr. Bradley, she likely would have assessed a very different RFC, thereby affecting the ultimate disability determination for the period from June 24, 2004 through May 13, 2008.

As an additional note, the Court also finds persuasive plaintiff's argument that the ALJ erred in failing to note Dr. Bradley's observation that plaintiff, "sitting in a chair, needed to adjust positions rather frequently" (Tr. 234). An ALJ "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571.

### ii.   Other medical evidence: Mr. Zygar and Mr. Myers

Because the Court has concluded that this matter should be reversed and remanded for further consideration of the medical opinion evidence provided by Dr. Bradley, and based on the relevant record, the Court concludes that the other medical evidence provided by both Mr. Zygar and Mr. Myers should be evaluated anew following remand of this matter, as well.

### b.   Mental impairments

#### i.   Dr. Kimberley Wheeler, Ph.D., examining doctor

1    Dr. Wheeler evaluated plaintiff on February 22, 2007 and observed plaintiff's

2    restless psychomotor activity, restricted/constricted affect and dysphoric mood (*see* Tr.

3    283). Dr. Wheeler diagnosed plaintiff adjustment disorder with mixed anxiety and

4    depressed mood (*see* Tr. 280). She opined that he suffered from marked impairment in

5    his ability to respond appropriately to and tolerate the pressures and expectation of a

6    normal work setting (*see* Tr. 281).

7        The ALJ gave significant weight to the opinion of non-examining state agency

8    psychologist, but gave only some weight to the opinion of examining psychologist Dr.

9    Wheeler (*see* Tr. 715 (*citing* Tr. 316-33)). Plaintiff complains that the ALJ failed to

10   acknowledge that an opinion of an examining doctor generally is afforded greater weight

11   than the opinion of a non-examining doctor (*see* Opening Brief, ECF No. 14, p. 10).

12   Plaintiff correctly states the federal regulations and the law: An examining physician's

13   opinion is "entitled to greater weight than the opinion of a nonexamining physician."

14   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citations omitted); *see also* 20 C.F.R.

15   § 404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has

16   examined you than to the opinion of a source who has not examined you"). "In order to

17   discount the opinion of an examining physician in favor of the opinion of a nonexamining

18   medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by

19   substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir.

20   1996) (*citing Lester, supra*, 81 F.3d at 831).

21       Here, the ALJ provided the following reasoning:

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 12

> Some weight is given because Dr. Wheeler had the opportunity to observe the claimant during mental status testing. However, greater weight is not given because she did not have the opportunity to consider many of the claimant's activities discussed above such as hours he spends reading or his interactions with other clinicians. Furthermore, the claimant did not entirely disclose information to Dr. Wheeler where he reported that his last methamphetamine use was four months prior when he relapsed and prior to which he had been clean for two years. As discussed above, the claimant later reported daily use of methamphetamine during that period.

(Tr. 715).

First, plaintiff argues that his "ability to read and his ability to interact with other clinicians does not prove that he could respond appropriately to and tolerate the pressures and expectation of a normal work setting" (Opening Brief, ECF No. 14, pp. 10-11 (*citing* Tr. 281)). This argument is persuasive. Spending hours reading generally is a solitary task, and furthermore, the ALJ failed to explain the relevance of interactions with clinicians in a clinical setting to Dr. Wheeler's opinion that plaintiff suffered from marked limitation in his ability to respond appropriately to and tolerate the normal pressures and expectations of a normal work setting (*see* Tr. 281, 715). It is unclear how plaintiff's ability to interact with doctors in a clinical setting is a legitimate reason to discount Dr. Wheeler's specific opinion regarding plaintiff's marked limitations on his ability to respond appropriately to and tolerate the pressures and expectation of a work setting.

Therefore, for this reason, and based on the relevant record, the Court concludes that the ALJ failed to explain adequately why her interpretation of these facts was more correct than the interpretation of Dr. Wheeler. *See Reddick v. Chater*, 157 F.3d 715, 725

1   (9th Cir. 1998) (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)) (an ALJ

2   must explain why her own interpretations, rather than those of the doctors, are correct).

3       Regarding the reliance by the ALJ on plaintiff's drug abuse, plaintiff contends that

4   plaintiffs' "drug abuse history is not a legitimate reason to reject Dr. Wheeler's opinion,

5   which was based on her clinical findings" (*id.*, p. 11). In addition, according to plaintiff,

6   the ALJ "is misinterpreting this evidence" (*see id.*). As noted by plaintiff, "Contrary to

7   the ALJ's finding, the record cited by the ALJ states that 'in the last twelve months he

8   reported using as much as two grams a day, seven days a week: It does not state that he

9   had been using that amount *daily* for the entire prior twelve months" (*see id.* (*internal*

10  *citation to* Tr. 1164)).

11

12      Because more weight generally is afforded to examining doctors, because the ALJ

13  failed to explain the relevance of interactions with clinicians in a clinical setting as a

14  reason to discount Dr. Wheeler's opinion that plaintiff suffered from marked limitation in

15  his ability to respond appropriately to and tolerate the normal pressures and expectations

16  of a normal work setting, and because it is unclear the extent and accuracy of the ALJ's

17  reliance on evidence of plaintiff's drug abuse when discounting Dr. Wheeler's opinions,

18  the Court concludes that Dr. Wheeler's opinion warrants further evaluation (*see* Tr. 281,

19  715).

20      As the Court already has concluded that this matter should be reversed and

21

22  remanded for further consideration of the medical evidence regarding plaintiff's physical

23  impairments, for the reasons stated, and based on the relevant record, the Court also

24  concludes that all of the medical evidence, and other medical or lay evidence regarding

1  both plaintiff's physical and mental impairments should be evaluated further following

2  remand of this matter. Therefore, the Court will not discuss plaintiff's arguments

3  regarding the evaluation of Dr. Terilee Wingate, Ph.D. and Ms. Sherry Walker, M.S.W.

4

5  **(2)      Whether or not the ALJ properly evaluated plaintiff's testimony.**

6          The Court already has concluded that the ALJ erred in reviewing the medical

7  evidence and that this matter should be reversed and remanded for further consideration,

8  *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part

9  on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore,

10 plaintiff's credibility should be assessed anew following remand of this matter.

11 **(3)      Whether or not the ALJ properly evaluated the lay evidence.**

12         Plaintiff complains about the ALJ's rejection of the lay evidence provided by

13 plaintiff's sister, Ms. Mary Schmidt. The ALJ rejected the opinions of Ms. Schmidt in

14 part because of a finding by the ALJ that Ms. Schmidt's observations "are of less value

15 than the observations of trained medical personnel," and because "she did not have the

16 opportunity to review x-rays, MRIs, or mental status examination done by medical

17 professionals" (*see* Opening Brief, ECF No. 14, p. 20 (*citing* Tr. 716); *see also* Tr. 168-

18 75). Plaintiff is correct that this reliance by the ALJ is legal error: if these were legitimate

19 reasons to discount lay testimony from a family member or friend, such evidence always

20 would be discarded on such basis. First, family members and friends generally do not

21 review x-rays and MRIs; and, secondly, even if they did, it is unlikely that they would

22 have medical expertise that would allow them to interpret such objective medical

evidence. Nevertheless, relevant federal regulations, social security rulings and Ninth Circuit caselaw make it clear that even lay evidence from friends and family members without any medical expertise allowing them to interpret x-rays and MRIs nevertheless is "competent evidence," which cannot be discredited "as not supported by medical evidence in the record." *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (*citing Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996)).

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources" and "other sources" such as nurse practitioners, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec*., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) and (e), 416.913(d)(4) and (e)).

1
2
3
For the stated reasons, the Court concludes that the ALJ's reference to the lack of medical expertise on the part of the lay witness is not a reason germane to that witness for rejecting her lay opinion.

4
5
6
7
8
9
10
11
12
13
14
15
The ALJ also found that "Ms. Schmidt appears to base her statements in part on the claimant's reports of pain" (*see* Tr. 716). However, the ALJ did not support this finding with any evidence from the record. The ALJ's findings must be supported by substantial evidence in the record, although none is cited or found herein following a review of the relevant record (*see* Tr. 168-75, 716). Multiple opinions clearly are provided from Ms. Schmidt's first-hand knowledge, such as her observation that "when he has stayed with me and my husband on occasion, he doesn't do much" (*see* Tr. 168) and that "sometimes he requires or needs reminders especially when he is in a depressed mood" (*see* Tr. 170). In contrast, Ms. Schmidt specifically indicated more than once that she did not know an answer (*see, e.g.,* Tr. 169) ("not sure") or indicated that a response was no, "Not that I know of" (*see* Tr. 174).

16
17
18
Based on the relevant record, the Court concludes that the ALJ's finding that Ms. Schmidt's opinions properly can be discarded due to a reliance on plaintiff's reports is a finding not based on substantial evidence in the record as a whole.

19
20
21
Therefore, the ALJ erred as well in her review of the lay evidence, providing an additional reason that this matter should be reversed and remanded.

22
23
24
As the Court already has determined that this matter should be reversed and remanded for further consideration of the medical evidence, the lay evidence and plaintiff's testimony, the determination regarding plaintiff's residual functional capacity

("RFC") should be determined anew following remand of this matter. Similarly, if reached during the sequential disability evaluation process following remand, step five should be evaluated anew, as should the question of whether or not plaintiff is disabled pursuant to Medical-Vocational Rule 201.14.

**(4)     Whether this matter should be reversed and remanded for further proceedings or for a direct award of benefits for the period of June 24, 2004 through May 13, 2008.**

Generally when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir.

1    1988)). Although the ALJ erred in her review of the medical evidence provided by Dr.

2    Bradley, his opinion is not uncontradicted.

3        The ALJ is responsible for determining credibility and resolving ambiguities and

4    conflicts in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

5    (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).    If the medical

6    evidence in the record is not conclusive, sole responsibility for resolving conflicting

7    testimony and questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d

8    639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir.

9    1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

10                                        CONCLUSION

11

12        The ALJ erred in his review of the medical opinion evidence submitted by Dr.

13   Bradley regarding plaintiff's physical impairments. She also did not discuss significant

14   probative evidence regarding plaintiff's mental impairment, including that provided by

15   plaintiff's treating psychiatrist, Dr. Truschel. In addition, the ALJ rejected the opinion

16   from examining doctor, Dr. Wheeler, whose opinion the Court concludes should be

17   discussed further. Because of the lack of discussion of the treating physician's records,

18   and the lack of acknowledgement that treating and examining sources are afforded

19   greater weight generally than opinions from non-examining sources, and based on the

20   relevant record, the Court concludes that all of the medical evidence should be evaluated

21   anew.

22

23        As an assessment of a claimant's allegations and his credibility depends in part on

24   an assessment of the medical evidence, claimant's allegations should be assessed anew

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 19

following remand of this matter. Similarly, plaintiff's RFC, and the remainder of the sequential disability evaluation process, as necessary, should be evaluated anew following remand of this matter.

The ALJ also erred in her review of the lay evidence, and this evidence should be evaluated anew following remand of this matter.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration. This further consideration again should be limited to the closed period of June 24, 2004 through May 13, 2008.

**JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 28**,** 2014, as noted in the caption.

Dated this 5th day of February, 2014.

J. Richard Creatura
United States Magistrate Judge